**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                                                       REPORT AND
                                                       RECOMMENDATION
                                                       04-CR-6143

v.

ROBINSON SANCHEZ,
    a/k/a "Guillermo Nieves,"

        Defendant.

---

### Preliminary Statement

On October 21, 2005, Defendant Sanchez filed his initial motion to suppress evidence in this case as the result of an alleged unlawful search. (Docket #101). After a substitution of counsel on April 11, 2006, Sanchez's new attorney filed supplemental motions seeking (1) suppression of Sanchez's statements and the evidence, (2) dismissal of the indictment based on an alleged vindictive prosecution, (3) the identity of the government's confidential informant and (4) severance of his trial from the remaining co-defendants. (Docket #164, 192). The Government has filed papers in opposition to these motions. (Docket #111, 131, 205). A suppression hearing was held on January 4, 2006. By Order of Judge Michael A. Telesca, dated September 22, 2004, all pre-trial motions have been referred to this Court pursuant to 28 U.S.C. §636(b)(1)(A)-(B). (Docket #5). The following is my Report and Recommendation as to Sanchez's motions.

**Factual Background**

Government Proof: The testimony adduced at the January 4, 2006 suppression hearing revealed that on August 26, 2004 at approximately 9:45 p.m., Rochester Police Officer Frank Alvarado assisted approximately seven other officers in executing a written search warrant, signed by Monroe County Court Judge Patricia Marks, for Room 215 at the Extended Stay Hotel in Greece, New York. See Transcript of January 4, 2006 Suppression Hearing [hereinafter "T"] at 9-11 (Docket #156). The officers entered the room using a key card provided by the hotel manager. (T at 10). Officer Alvarado entered the room first with a shotgun and yelled "police, don't move" in both English and Spanish. (T at 10-11, 27, 31). As he entered the room, Alvarado observed five male Hispanics present, including Sanchez, who was seated in a recliner. (T at 12-13). As Alvarado ordered the men to get down on the floor, he saw a small handgun lying to the left of the chair where Sanchez sat. (T at 13). All five men were handcuffed while the officers executed the search warrant. (T at 13). The officers found another handgun behind a chest of drawers, as well as a bag containing a substance later determined to be heroin. (T at 13-14). Based on these findings, all five men were arrested.

In a search incident to Sanchez's arrest, Alvarado found a sum of money and a hotel room key inside an envelope with "203" written on it in Sanchez's pants pocket. (T at 16-18, 31, 38). Alvarado

asked Sanchez about the key and he responded "it's for my room down the hall." (T at 18, 31-32). Pursuant to Sergeant Peck's instructions, Alvarado asked Sanchez if anyone else was in Room 203 and if he had a problem with the police "checking" it. (T at 19, 32-33). Sanchez did not respond whether anyone else was in the room, but told Alvarado that he had "no problem if they checked it." (T at 19).[1]

Thereafter, the officers entered Room 203. Although they found no other person inside the room, they did observe in plain view a digital scale, similar to one located in Room 215. According to the government, a decision was made not to search Room 203 immediately, but instead to secure the room and call Monroe County Court Judge Marks to apply for a supplemental telephonic search warrant for Room 203. Upon Judge Marks' granting of the oral search warrant, the officers re-entered room 203 and conducted a complete search. During the search, the officers found and seized cocaine, heroin, and assorted drug packaging materials located in Room 203.

Defense Proof: At the hearing, Defendant Sanchez testified on his own behalf via a Spanish interpreter. He confirmed that he was visiting Room 215 of the Extended Stay Hotel on August 26, 2004 when the police arrived. (T at 40). Sanchez testified that he

---

[1] Alvarado testified that he conducted this conversation with Sanchez in Spanish. (T at 19).

cannot speak English very well and denied that any of the officers spoke to him in Spanish. (T at 40). According to Sanchez, an officer asked him for permission to go to his room, number 203, in English. (T at 41). Sanchez denied giving any officer permission to search his room or check it for other individuals. (T at 41, 42). According to Sanchez, he said to the officer "I don't have anything illegal, why do you have to check my room?" (T at 41). With the instant motions, Sanchez seeks to suppress the evidence found in Room 203 and Room 215.

## Discussion

1. <u>Standing to Contest the Searches</u>:   The Government does not dispute that Sanchez has standing to contest the search of his own room, Room 203. The government does, however, challenge Sanchez's standing to contest the search of Room 215.² The Government argues that Sanchez's failure to provide a sworn statement concerning his relationship to Room 215, such that he would have a legitimate expectation of privacy there, prevents him from alleging that <u>his</u> Fourth Amendment rights were violated by the search.

I agree with the government. Sanchez's mere presence in Room 215 as a visitor is insufficient to give him a reasonable

---

² Sanchez does not now raise an objection to the police search of Room 253.

4

expectation of privacy so as to have standing to challenge the search. In <u>Minnesota v. Carter</u>, 525 U.S. 83, 90-91 (1998), the Supreme Court concluded that two defendants who were in an apartment of another solely for the purpose of bagging cocaine did not have a legitimate expectation of privacy in the apartment. Similarly, a visit to another's hotel room, without more, does not bestow the visitor with a reasonable expectation of privacy in the contents of the hotel room. <u>See</u> <u>United States v. Cody</u>, 434 F. Supp. 2d 157, 163 (S.D.N.Y. 2006)(defendant's status as "an intermittent guest" in the hotel room was insufficient to give him standing to challenge the search of the room); <u>United States v. Purvis</u>, 544 F.Supp. 68, 71-72 (S.D.N.Y. 1982)("a casual visitor to a hotel room does not have a legitimate expectation of privacy"). Since Sanchez has not provided an affidavit stating that he was anything more than just a casual visitor in Room 215, he has no expectation of privacy upon which to base a motion to suppress.

2. <u>Validity of the Search Warrants</u>: In his supplemental motion, Sanchez alleges deficiencies with regard to the written search warrant for room 215, claiming that it lacked specificity as to the location to be searched as well as support for its authorization of a "no-knock" entry. Sanchez also alleges procedural violations in obtaining the oral search warrant for room 203.

(A) <u>Room 215</u>: With regard to the written search warrant for

5

Room 215, I find that it contained the requisite level of specificity as to the location to be searched. The warrant gave the officers authority to search Room 215 at the Extended Stay America Hotel in Greece. "[W]hen a search involves a building with multiple, separate units," and the warrant specifies the precise unit that is the subject of the search, the warrant is sufficient to satisfy the particularity requirement. See United States v. White, 416 F.3d 634, 637 (7th Cir. 2005), cert. denied, __ U.S. __, 126 S.Ct. 1393 (2006).

Sanchez's challenge to the "no-knock" provisions of the written warrant has been rendered futile by the Supreme Court's recent decision in Hudson v. Michigan, __ U.S. __, 126 S.Ct. 2159 (2006). In Hudson, the Court ruled that a violation of the "knock and announce" requirement does not require suppression of all evidence seized in the resulting search. Imposing the "massive remedy" of suppression for failure to knock violations "would generate a constant flood of alleged failures to observe the rule" and result in difficult determinations about whether the police waited "long enough" before entering. Id. at 2165-66. See United States v. Snow, 462 F.3d 55, 61 (2d Cir. 2006)(Hudson confirms that "strong medicine of suppression inappropriate for an officer's failure to knock and announce").

(B) Room 203: The government relies on Sanchez's consent for the initial entry into Room 203 and the oral search warrant

6

obtained from Judge Marks as legal justification for the subsequent and more thorough search of the hotel room. I find both arguments to be supported by the facts adduced at the suppression hearing.

First, as to Sanchez's consent, it is well settled that consent constitutes an exception to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). "So long as the police do not coerce consent, a search conducted on the basis of consent is not an unreasonable search." United States v. Garcia, 56 F.3d 418, 422 (2d Cir. 1995). The burden of proving a valid consent rests with the government. Schneckloth, 412 U.S. at 248. Here, I found officer Alvarado's testimony that he asked Sanchez (in Spanish) if he ""had a problem with us [the police] checking his room" for others and Sanchez's response that he had no problem with them checking it to be credible. Conversely, I found Sanchez's testimony about how he responded to the questions posed by Officer Alvarado to be more uncertain and hence less credible.

There is no evidence that the consent was coerced or involuntary. Although Sanchez was under arrest at the time his consent was sought, Officer Alvarado described Sanchez as "very calm" (T. 34) and Sanchez said nothing to contradict Alvarado in that respect. That Sanchez had been arrested and physically secured at the time he gave his consent does not disqualify the consent from being found to be voluntarily made. United States v. Crespo, 834 F.2d 267, 271 (2d. Cir. 1987)(that defendant was "under

7

arrest and in custody, or even handcuffed" does not necessitate finding that consent to search was coerced).

Sanchez argues that his response to Officer Alvarado's question about checking Room 203 should be suppressed as the result of a custodial interrogation without benefit of Miranda warnings. Despite the fact that Sanchez was under arrest and had not been given Miranda warnings when Officer Alvarado asked him if they could "check his room," Sanchez's consent was still valid. The absence of Miranda warnings does not operate to vitiate Sanchez's consent. United States v. Moreno, 897 F.2d 26, 33 (2d Cir. 1990). See United States v. Pecoraro, 991 F. Supp. 146, 148 (W.D.N.Y. 1997)("it is possible to obtain consent after a person has been arrested and placed in custody and prior to being advised of Miranda rights"). Based on the totality of circumstances as adduced during the suppression hearing, including the behavior of the officers, the defendant's calm demeanor and the conditions present when the consent was obtained, I find that Sanchez's consent to check his room for the presence of others was knowing and voluntary.

As to the subsequent telephonic warrant application for Rooms 203 and 253, Sanchez raised various procedural defects in the warrant application process, including allegations that Officer Simpson was never placed under oath, never read the warrant to Judge Marks and a longhand record was not made or filed with the

Rochester City Court. Sanchez argues that the procedure used to obtain the warrant was so violative of Rule 41 that any fruits of the search must be suppressed. I find that whatever procedural defects existed in the issuance of the warrant were not so substantial as to render the warrant invalid. First, Judge Marks' longhand notes, attached to Sanchez's motion, belie his claims that Officer Simpson was not sworn under oath and that there was no record of the application made. Indeed, Judge Marks' notes specifically state that she placed the officer under oath. Second, there is no support in the record for Sanchez's assertion that no warrant was prepared or read back to Judge Marks or that her notes were never filed with the Rochester City Court. Finally, there simply is no basis for this Court to find anything other than that the officers had an objective good faith basis to rely on the telephonic warrant issued by Judge Marks. United States v. Leon, 468 U.S. 897 (1984). See also United States v. Matias, 836 F.2d 744, 747 (2d Cir. 1988)(because the issuing judge's failure to comply with the requirements for an oral search warrant application was "obviously an oversight," court applied good faith exception and denied motion to suppress).

3. Vindictive Prosecution: Sanchez also alleges in his omnibus motion that with the recent filing of a Fourth Superceding Indictment, the Government has engaged in a retaliatory and vindictive prosecution of him which requires dismissal of the

indictment. The Government acknowledges that "[p]rior to the return of the present indictment, the government did inform defendant through counsel that additional charges under Section 924(c) would be sought if he did not reach an agreement with the government to resolve the case." See Government's Response at page 37.

Any prosecution brought with a vindictive motive to "penaliz[e] those who choose to exercise constitutional rights, would be patently unconstitutional." United States v. Sanders, 211 F.3d 711, 716 (2d Cir. 2000)(internal quotations and citations omitted). Thus, an indictment will be dismissed if there is evidence that the prosecutor harbors a genuine animus towards the defendant. Id. However, it is well settled that a prosecutor's exercise of his right to seek an indictment for the highest charge carrying the greatest sentence that is supported by the facts does not establish per se vindictiveness. Indeed, in Bordenkircher v. Hayes, 434 U.S. 357, 358-60 (1978), the Supreme Court held that there was no prosecutorial vindictiveness where the prosecutor advised a defendant that if he did not plead guilty and accept a five-year sentence recommendation he would face an indictment exposing him to a life sentence. Accordingly, I find that there is no evidence here of any animus, certainly not one sufficient to support a vindictive prosecution claim. Therefore, Sanchez's motion to dismiss the indictment on such grounds should be denied.

See <u>United States v. White</u>, 972 F.2d 16, 19 (2d Cir. 1992)(prosecutor's decision to increase charges against defendant who declined plea offer did not amount to prosecutorial vindictiveness).

    4.  <u>Identity of Confidential Informants</u>: In his motion, Sanchez also seeks the identity of the confidential informant relied upon in the Government's search warrant application. It is my recommendation, however, that this request be denied. The Second Circuit has stated that disclosure of the identity of a confidential informant is not required unless the informant is shown to be material to the defense. <u>United States v. Saa</u>, 859 F.2d 1067, 1073 (2d Cir. 1988). Here, there in no indication that the government's informant is a material witness to the charges currently pending against Sanchez and thus, there is no basis to subject the informant to the potential dangers of being identified. <u>See</u> <u>In re Crawford</u>, 420 F. Supp. 2d 142, 143 (W.D.N.Y. 2006)(where defendant was only charged with drugs and firearms located during the search, he was not entitled to identity of informant who was only relevant to obtaining search warrant); <u>United States v. Saltares</u>, 301 F. Supp. 2d 305, 306-307 (S.D.N.Y. 2004)(same).

    5. <u>Severance:</u> Finally, Sanchez seeks to be tried separately from his remaining co-defendants because he "is only involved in a small portion" of the alleged conspiracy and will be "unduly prejudiced by the 'spillover' of evidence against his co-

defendants." <u>See</u> Plaintiff's Motion at ¶ 115. The Government objects to any severance claiming that Sanchez has not satisfied his burden under Fed. R. Crim. P. 14.

The general rule is that individuals, such as Sanchez, who are charged in a conspiracy should be tried together. <u>See</u> <u>United States v. Golomb</u>, 754 F.2d 86 (2d Cir. 1985). A defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that a joint trial will result in 'substantial prejudice.' <u>United States v. Sampson</u>, 385 F.3d 183, 190 (2d Cir. 2004), <u>cert.</u> <u>denied</u>, 544 U.S. 924 (2005). <u>See</u> <u>also</u> <u>United States v. Werner</u>, 620 F.2d 922, 928 (2d Cir. 1980)("In order to prevail, the defendant must show not simply some prejudice but substantial prejudice."). Therefore, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." <u>Zafiro v. United States</u>, 506 U.S. 534, 539 (1993). Where a defendant seeks severance because of an alleged risk of "prejudicial spillover" from his co-defendants as Sanchez does here, he bears "an extremely heavy burden." <u>United States v. McCabe</u>, 2006 WL 2990480, *2 (E.D.N.Y. Oct. 19, 2006), <u>quoting</u> <u>United States v. Friedman</u>, 854 F.2d 535, 563 (2d Cir. 1988).

Here, the only potential prejudice alleged by Sanchez is that the Government may introduce incriminating statements by his co-

defendants in violation of his Sixth Amendment rights.  See <u>Bruton v. United States</u>, 391 U.S. 123 (1968).  However, as the Government counters, at this juncture, this argument is nothing more than speculation and any <u>Bruton</u> issues can be addressed at the time of trial and remedied with the appropriate redactions.  See <u>United States v. Wong</u>, 2000 WL 297163, *3 (S.D.N.Y. 2000)(motion for severance denied and government directed to redact co-defendant's statements to exclude defendant's name).  Accordingly, Sanchez's motion for severance should be denied without prejudice to renew, if appropriate, before Judge Larimer.

## Conclusion

For the foregoing reasons, it is my Report and Recommendation that Sanchez's motions be **denied.**

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: November 22, 2006
Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R. Civ.P. 72(b) and Local Rule 72.3(a)(3).[3]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See e.g. Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Government and the Defendant.
**SO ORDERED.**

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated: November 22, 2006
Rochester, New York

---

[3] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. §3161(h)(1)(f) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. <u>United States v. Andress</u>, 943 F.2d 622 (6th Cir. 1991); <u>United States v. Long</u>, 900 F.2d 1270 (8th Cir. 1990).

14