UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                              Plaintiff,

               v.

ROBINSON SANCHEZ, a/k/a "Guillermo Nieves,",

                              Defendant.
_____

DECISION AND ORDER

04-CR-6143L

      Defendant Robinson Sanchez ("Sanchez") was sentenced by this Court on May 11, 2012, over eight years ago, principally to an aggregate term of 360 months plus one day. That sentence was many months below the sentence recommended by the United States Sentencing Guidelines ("Guidelines") of 468-495 months. Also, the final sentence was five years less than anticipated at Sanchez's plea proceeding years earlier because of Sanchez's cooperation and the Government's 5K motion under the Guidelines.

      Sanchez has now filed, *pro se*, a motion for a sentence reduction, sometimes referred to as a motion for compassionate release (Dkt. #434), under the provisions of 18 U.S.C. § 3582(c)(1)(A). He seeks a reduction to a sentence of time served followed by five years of supervised release. The Government has filed a thorough Response in opposition to the motion (hereinafter "Response") with an attached Exhibit 1. (Dkt. #440).

      The Court has reviewed the papers filed on the pending motion, as well as all of the relevant prior filings in the case, including the Fourth Superseding Indictment (Dkt. #163), the Plea Agreement (Dkt. #442), the transcript of the plea proceeding (Dkt. #330), the Presentence Report

(Dkt. #366) ("PSR"), the Government's Sentencing Statement and 5K motion (Dkt. #357), the Government's Letter (Dkt. #364) to the Court in support of its 5K motion, and the transcript of the sentencing proceeding on May 11, 2012 (Dkt. #369).

Defendant's Sanchez's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) is in all respects DENIED.

## BACKGROUND

Sanchez was arrested along with several co-defendants in a hotel in Greece, New York, on August 26, 2004. The arresting officers found, in two rooms, over three kilograms of cocaine, approximately 160 grams of heroin, drug paraphernalia, three semi-automatic pistols and $30,600 in cash.

Eventually Sanchez and others were indicted in a Fourth Superseding Indictment (Dkt. #163). In Count One, Sanchez was charged with conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin and 5 kilograms or more of cocaine. Conviction on that count subjected him to a term of imprisonment of 10 years to life imprisonment. In Count Three, Sanchez was also charged with possession with intent to distribute over 500 grams of cocaine on August 26, 2004. Conviction on that count subjected him to a possible sentence of five to 40 years imprisonment. In Count Four, he was charged with possession with intent to distribute over 100 grams of heroin. That subjected him to a minimum of five years and a maximum of 40 years imprisonment.

Sanchez was also charged in Count Six, Seven and Eight with three firearms offenses, in violation of 18 U.S.C. § 924(c). Two of these offenses allegedly occurred on August 20, 2004 and the third, in Count Eight, occurred on August 26, 2004. Conviction on all three of these

counts together would have required a mandatory sentence of life imprisonment. Conviction on any one firearms offense required a mandatory five-year consecutive sentence; a conviction on any two firearms offenses resulted in a mandatory 25-year sentence consecutive to the first firearms offense and any other sentence.

## PLEA AGREEMENT

After extensive negotiations involving several jurisdictions, Sanchez pleaded guilty in this Court pursuant to a detailed Plea Agreement to Counts Four, Six and Eight of the Fourth Superseding Indictment. Count Four involved the heroin charge and Counts Six and Eight involved two separate firearms offenses, that is possessing a firearm in furtherance of a drug trafficking crime.

To be sure the Plea Agreement called for a significant term of imprisonment, but it also provided several substantial benefits to Sanchez. The Government and Sanchez agreed in the Plea Agreement that the Guideline range was 468 to 495 months imprisonment based upon the agreed-upon factual basis which included an equivalent under the Guidelines of five to 15 kilograms of cocaine. All three of the counts to which Sanchez pleaded contained mandatory minimum terms. Count Four required a mandatory five-year minimum term, Count Eight a mandatory five-year minimum term to life and Count Six a mandatory twenty-five-year minimum term to life. The Plea Agreement was structured pursuant to Fed. R. Crim. P. 11(c)(1)(C) with an agreed-upon sentence of 420 months (35 years).

But, as mentioned, there were several crucial provisions in the Plea Agreement that benefitted Sanchez. First, Count One, the narcotics conspiracy count, Count Three, a second drug count, and Count Seven, a third firearms offense, were to be dismissed. Obviously, the conviction on those counts could have entailed even greater punishment, including life imprisonment.

3

In addition to the charges in the Western District of New York, Sanchez faced significant pending charges in the Eastern District of New York, as well as in Kings County, New York. Because of Sanchez's agreement to plead guilty, the prosecution pending in the Eastern District of New York, which included charges of racketeering, conspiracy to distribute cocaine base, cocaine and heroin, was to be dismissed. (Plea Agreement, ¶ 21). In addition, it was anticipated that Sanchez would plead guilty to a Kings County indictment charging him with attempted murder and related offenses. Because of Sanchez's agreement to plead guilty in the Western District of New York, it was agreed that any sentence he received for that attempted murder conviction would run concurrently with the sentence imposed in the Western District of New York. It turned out that Sanchez did plead in that jurisdiction and was sentenced to a nine-year term of imprisonment, concurrent to the sentence in the Western District of New York.

When Sanchez pleaded guilty in the Western District of New York, he knew what he was doing. He pleaded to avoid an almost certain sentence of life imprisonment if convicted of all counts in the Western District of New York, the Eastern District of New York and Kings County.

In addition, the Plea Agreement contained a cooperation provision, that if the defendant provided substantial assistance, the Government agreed to make a 5K motion under the Guidelines for a reduction from the otherwise agreed-upon 420-month sentence. As it turned out, over several years, Sanchez did provide some cooperation and at the time of his sentencing in this Court on May 11, 2012, the Government moved under 5K of the Guidelines for a reduction of five years and recommended a 360-month-plus-one-day sentence, which is what the Court imposed. Defendant's cooperation and the Court's sentence resulted in a five-year reduction of Sanchez's sentence.

MOTION FOR COMPASSIONATE RELEASE: 18 U.S.C. § 3582(c)(1)(A)

Sanchez seeks compassionate release from the two sentences imposed on Counts Six and Eight for Section 924(c) violations. According to the law in effect when Sanchez was sentenced, those sentences were "stacked" that is they were imposed consecutively, five years on Count Eight and twenty-five years consecutive on Count Six.

In 2018, Congress passed the First Step Act of 2018. Pub. L. 115-391; 132 Stat 5194 ("The Act"). The Act became effective on December 21, 2018. The Act changed previous authority and provided that the stacking of sentences for offenses under 18 U.S.C. § 924(c) only applied to repeat offenders "after a prior conviction" [under 924(c)] has become final." The Act, § 403.

Sanchez previously sought relief in this Court based on enactment of the First Step Act (Dkt. #427) and in Decision and Order entered March 17, 2020 (Dkt. #432), this Court denied Sanchez's motion for relief under the First Step Act for several reasons. First, Sanchez was precluded by the Plea Agreement from appealing the sentence imposed and also, principally, because the First Step Act by its terms was not to be applied retroactively.

Essentially, Sanchez seeks once again the same relief from the consecutive sentences but uses the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as his vehicle for obtaining the relief. Sanchez claims his circumstances constitute compelling and extraordinary circumstances which the Court, in its discretion, should determine that the prior sentences should be reduced to time served.

Although the sentencing issue on the Section 924(c) counts forms the bulk of Sanchez's motion, he does reference the global COVID pandemic. (Dkt. #434, pp. 18-19). His argument basically is that the pandemic subjects him to a "risk of death or severely debilitating illness."

5

Sanchez also claims that he has matured while incarcerated and become a "responsible adult" and a person of "sound character." (Dkt. #434, p. 2).

## COMPASSIONATE RELEASE STATUTE: 18 U.S.C. § 3582(c)(1)(A)

To obtain relief under the statute, a defendant must fully exhaust his administrative remedies and must present "extraordinary and compelling reasons" warranting a reduction of a previously-imposed sentence. In addition, and most significantly, the Court must review and consider all of the sentencing factors listed at 18 U.S.C. § 3553(a) to determine whether this particular defendant warrants release to the community. The burden is on the inmate to establish extraordinary and compelling reasons to modify or reduce the sentence.

In this case, the Government concedes that Sanchez has exhausted his administrative remedies. The Government, however, asserts that relief should be denied for several reasons. First, this Court has already ruled that the First Step Act of 2018 is not retroactive when it denied Sanchez's prior motion in March 2020 (Dkt. #432). The Government also urges denial because Sanchez has failed to carry his burden that he faces extraordinary issues relative to the COVID virus. But also, significantly, the Government urges the Court to deny the present motion after reviewing all the sentencing factors under Section 3553(a).

I agree with the Government's arguments in all respects, especially relative to the sentencing factors under Section 3553(a). It is that analysis that I turn to first.

I deny Sanchez's present motion based on the factors laid out in Section 3553(a). I rely on the circumstances of the offenses charged, the history and characteristics of the defendant involving other criminal activity, the need for the sentence to reflect the seriousness of Sanchez's activity, the need to afford adequate deterrents, to provide just punishment, and to protect the

public. Based on this finding, which I will discuss *infra*, the Second Circuit has recently clarified that when a denial of the compassionate release motion is based solely on statutory sentencing factors, the court need not even address whether the inmate's proffered reasons for release are extraordinary and compelling. *United State v. Keitt*, --- F.4th ---, 2021 WL 6058144 (2d Cir. Dec. 22, 2021).

Therefore, although not required to do so, in the alternative I do find that Sanchez has failed to carry his burden of establishing extraordinary and compelling reasons to reduce the sentence.

SENTENCING FACTORS: 18 U.S.C. § 3553(a)(1) & (2)

A review of the record demonstrates why the sentencing factors preclude defendant's request for compassionate release. First, he pleaded guilty to trafficking in heroin which because of the amount, required a mandatory minimum five-year term and a potential 40-year sentence. He also pleaded to two separate firearms offenses under Section 924(c), the first occurring on August 20, 2004, the second occurring about a week later on August 26, 2004. As discussed already, those sentences contain mandatory minimum terms with a maximum of life in prison.

The Plea Agreement covered only three counts of the indictment, the Government dismissed the narcotics conspiracy count, another narcotics count, and a third Section 924(c) charge. If convicted on those counts, especially the third Section 924(c) count, defendant faced a term of life imprisonment.

The factual basis set forth in the Plea Agreement demonstrates that the narcotics conspiracy was most significant. Because of the drug quantity, the Guidelines provided for a sentence of

468-495 months and a potential fine of $2,000,000.  The relevant drug equivalent was between five and fifteen kilograms of cocaine.

The Presentence Report sets forth in detail the significant narcotics distribution activities involving the defendants which involved multiple kilograms of drugs and over $100,000 in proceeds.

It appears that Sanchez was an "enforcer" or gun-for-hire both in the Western District of New York and in Puerto Rico.  As the Presentence Report (Dkt. #366) notes in paragraph 39, defendant and others were interrogating a drug cohort about whether he had been involved in a theft of four kilograms of cocaine from the group.  As the Presentence Report notes, "Sanchez put a gun to the head of Jose Rodriguez and threatened to kill him."  This use of a firearm continued later when they confronted another suspect.  The report describes Sanchez on a public street "brandishing a gun at bystanders on the street."

As mentioned, as part of the Plea Agreement, at least two significant prosecutions were affected by the guilty plea in the Western District of New York.  Sanchez had been charged in Kings County, New York with attempted murder.  In fact, he pleaded guilty to that charge and received a nine year sentence to run concurrently with the federal charges in this district.  Sanchez's string of crimes continued.  He was charged in the Eastern District of New York with multiple violations, including racketeering, racketeering conspiracy, distribution of cocaine base, cocaine and heroin.  All of these charges were dismissed based on the significant sentences received in this district.

The sentence in the Western District of New York was structured in such a way to reflect the seriousness of all this conduct.  Sanchez agreed to a sentence of 420 months pursuant to Fed. R. Crim. P. 11(c)(1)(C).  That sentence would only be reduced or modified if the defendant provided cooperation.  It turned out Sanchez did provide cooperation and his sentence was reduced by five years to the 30-year term that he is now serving.

But that is not all. The Government submitted a letter to the Court under seal (Dkt. #364) to explain the basis for the Government's 5K motion urging the Court to reduce Sanchez's sentence by five years. That letter did describe Sanchez's activities which the Government believed constituted substantial assistance. However, it also described Sanchez, acting as an enforcer. Sanchez, with another, in July 2004, shot and killed two rival gang members in Puerto Rico to avenge the murder of one of Sanchez's cohorts. That letter referencing cooperation was, of course, copied to defendant's counsel. At the time of defendant's sentencing on May 11, 2012, the Government referenced this double homicide in Puerto Rico and it appears that Sanchez admitted his involvement in the murders during his proffer sessions with the Government.

Sanchez has indeed received a significant sentence, now 360 months. He has served a substantial portion of that sentence since he has been in custody since his initial appearance in March 2005. Sanchez's plea to two firearms offenses, charging use of a firearm in furtherance of drug trafficking crimes and the other evidence indicating his willingness to threaten individuals with a firearm and significantly, to use a firearm in the double homicide in Puerto Rico demonstrates his willingness to use firearms and engage in violence. When taken together, these facts which relate to the circumstance of the offenses in the Western District of New York, as well as the history and characteristics of this defendant, compel a conclusion that these sentencing factors warrant denial of Sanchez's motion. The sentence imposed did reflect the seriousness of the offense, adequately provided punishment, and indeed protects the public from further acts of a similar nature.

This lengthy string of violent behavior including criminal charges in multiple districts suggests that the sentence imposed was appropriate in light of all the factors under Section 3553(a)(1) & (2), and should not be modified now.

Under authority of the recent Second Circuit *Keitt* decision, my review of the sentencing factors discussed above clearly warrant denial of the motion without further consideration of whether Sanchez has shown extraordinary and compelling reasons for the relief he seeks.

## EXTRAORDINARY AND COMPELLING REASONS

Although not required to do so, as an alternative basis for denying the motion, it is clear that Sanchez has failed to establish extraordinary and compelling reasons to grant relief. Most compassionate release motions presented to this Court have involved issues relating to the COVID pandemic and its effect on the individual inmate. Here, Sanchez has done little more than say that there is a pandemic and that there is some risk.

It is clear that his "concern" about the pandemic is insufficient to establish extraordinary and compelling reasons for relief. Courts have routinely concluded that the pandemic itself does present extraordinary and compelling circumstances warranting relief. As the Government notes, Sanchez has not identified any medical condition that heightens his risk. There does not appear to be any chronic medical ailment. In fact, Sanchez is classified at a low medical care level II. In addition, according to the Government, Sanchez has received the Pfizer vaccine.

Sanchez's lengthy analysis of the Section 924(c) sentences and the change effected by the First Step Act of 2018 similarly does not warrant granting his request that the sentence be reduced to time served. This Court have previously considered the matter when it denied Sanchez's prior motion in a Decision filed almost two years ago on March 17, 2020. In that Decision, this Court noted that the Act was not retroactive. Sanchez, by this motion, is simply attempting to once again seek the relief that this Court denied in its Decision of March 17, 2020 (Dkt. #432).

Furthermore, as the Government notes, Sanchez was not convicted after trial of these firearms offenses. Rather, he pleaded guilty pursuant to a detailed Plea Agreement and an agreed-upon sentence of 420 months imprisonment. This was designed to reflect the seriousness of the multiple crimes charged in the Western District of New York and also the crimes that were either dismissed or affected in two other jurisdictions, the Eastern District of New York and Kings County, New York. The sentence could have been structured a different way, but Sanchez agreed to the structure, accepted the benefits of the Plea Agreement, including the ability to provide cooperation, and he should not now be heard to complain about it.

## CONCLUSION

Defendant Robinson Sanchez's motion (Dkt. #434) for a sentencing reduction under 18 U.S.C. § 3582(c)(1)(A) is DENIED in all respects.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        January 18, 2022.

11